URSULA UNGARO, UNITED STATES DISTRICT JUDGE
THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (D.E. 47) (the "Motion").
THE COURT has considered the Motion, Plaintiff's Response in opposition to the Motion (D.E. 59) (the "Response"), Plaintiff's Statement of Disputed Material Facts in opposition to the Motion (D.E. 56) ("Plaintiff's Facts"), Defendant's Reply in support of the Motion (D.E. 61) (the "Reply"), and the pertinent portions of the record and is otherwise fully advised in the premises.
For the reasons set forth below, Defendant's Motion is GRANTED.
BACKGROUND
The material facts, viewed in the light most favorable to Plaintiff, are as follows:
A. The Accident Aboard the Carnival Liberty
Plaintiff, Elizabeth Amy, brings this one-count[1] negligence action on behalf of her minor daughter, W.A.[2] W.A. was three years old at the time of the subject accident.[3]
On June 13, 2016, several members of the Amy family boarded the Carnival Liberty , a cruise ship operated by Defendant Carnival Corporation ("Carnival").[4] The family members on the Liberty included W.A., her father Wade Amy, her mother Elizabeth Amy, her grandmother Earlene, and her five siblings.[5] The family, including W.A., went to the Liberty 's Deck 14 for the bon voyage send-off party as the ship left the port to begin the cruise.[6] Elizabeth Amy watched the female children, including *1349 W.A., while Wade Amy watched their male children.[7]
The female Amys posed for some photos, and then walked over to join their male counterparts.[8] Ten to fifteen seconds later, W.A. fell-either over the top of the railing, or through the lower courses[9] of the railing-to the deck below.[10] W.A. sustained, inter alia , a skull fracture, impact to her brain, and bleeding inside her skull.[11]
At the time of the fall, Wade Amy had been showing the children (including W.A.) the nearby Coast Guard vessels.[12] He saw his daughter fall out of the corner of his eye, to the left of him.[13] Mr. Amy would have immediately prevented W.A. from climbing the railing if he had been watching her.[14] Mrs. Amy did not see W.A. climb on the railing, nor go through or over the railing, nor fall.[15]
B. The Subject Railings
The railing's horizontal courses were 200 millimeters, i.e. , 7.87 inches, apart.[16] The railing's overall height was 43.3 inches tall.[17] Carnival had knowledge of these dimensions prior to the incident.[18] The general purpose for the location of the railing on the ship was to prevent someone from falling on the deck below.[19]
The Liberty (including its railings) was built by the Fincantieri company.[20] Carnival, as the owner and purchaser of the ship, had at least some degree of control over the fit and finish of the ship, including what the guard rails would look like.[21] Presumably, if Carnival had told Fincantieri that it wanted its guard rail to have some climb protection built into it or had demanded that the space between the courses be four inches instead of seven or eight inches, Fincantieri would have complied.[22]
Carnival's general purpose for its guard rails includes "being efficient to contain humans"-including small children-"on one side from getting to the other side."[23] Generally speaking, Carnival concedes that "to have a guard rail that for whatever reason would not be efficient to contain foreseeable human beings on one side, and not allow them to get to the other side...would be dangerous."[24] Again, generally, *1350 Carnival knows that if a guard rail "has sufficient space between the lower intermediate railings," and if a small human being "were permitted to climb or crawl," that small human being "in theory...could get through there, if he or she wants to."[25] Carnival has always wanted to have "enough" lower rails on its guard rails to contain children.[26] But Carnival itself had never, prior to the incident, researched how narrow the spaces between the balusters needed to be to prevent a child passing through.[27] And Carnival's understanding was that "any guard rail" (including one with plexiglass) "is climbable."[28]
Carnival's corporate representative, Suzanne Vazquez, testified that Carnival was unaware of a single allegation of a child going through the courses on a railing.[29] She testified that in her 14 years with the company, 55 million passengers had sailed with Carnival, and W.A. was the first person ever alleged to have fallen through the courses of a railing.[30] Nevertheless, she also testified that "clearly it's easy to assume that a child has tried to climb on the guard rails on any cruise ship," including Carnival ships.[31] Ms. Vazquez testified that, if somehow a child were to go through or over the subject guard rail, it was obvious that the child could be injured.[32] But prior to the suit, she had never received any actual allegations that the subject courses were in fact wide enough to allow a toddler or small child to get through.[33]
Similarly, Ms. Vazquez testified that its fleet-wide databases do not contain any record of complaints of children falling (or almost falling) through or over railings for the three years before W.A.'s fall.[34] However, the databases do not (indeed, could not) capture unreported attempts by children to either climb or get through open courses on Carnival ships, i.e. , "near misses."[35] As a result, Carnival does not know how many kids have actually attempted to climb or crawl through or over its railings.[36]
C. Industry Standards
The requirements for the railing's dimensions are governed at least in part by the Cruise Vessel Safety and Security Act, 46 U.S.C. § 3507 et seq. , and the International Convention on Load Lines ("ICLL").[37] The ICLL was promulgated by the International Maritime Organization, which also created the International Convention for Safety of Life at Sea.[38] Many of the International Convention for the Safety of Life at Sea's requirements are binding on cruise vessels like the Liberty.[39]
Both of these authorities address specifications for railings. The Cruise Vessel *1351 Safety and Security Act provides that cruise ships "shall be equipped with railings that are located not less than 42 inches above the cabin deck."[40] Regulation 25 to the ICLL states that railings must be one meter high, i.e. , 39.37 inches.[41] The rail must have a minimum of three courses, with the lowest course opening not more than 230 millimeters, i.e. , 9.05 inches, and the remaining courses not more than 380 millimeters, i.e. , 149.96 inches apart.[42] Similarly, the Code of Federal Regulations provides that all passenger vessels shall have guard rails at least 39 ½ inches from the deck.[43] The rail must have a minimum of three courses, with the lowest course opening not more than nine inches, and the remaining courses not more than 15 inches apart.[44]
Lloyd's Register, a classification society, confirmed that the Liberty 's railings, including its height and courses, complied with the "applicable requirements of ICLL 1966 and 2005 consolidated edition Reg. 25" as well as the "additional minimum requirements" as set forth in § 1 of the Cruise Vessel Security and Safety Act and 46 U.S.C. § 72.40.[45] The classification society issued Carnival a certification of same regarding the Liberty 's railings.[46]
Plaintiff accepts that the foregoing authorities say what Carnival says they say. But Plaintiff disputes that these "requirements" "include or preclude" (1) openings in guardrail courses that are 4 inches or less, (2) utilizing solid, clear panels in lieu of guardrails with open courses, or (3) slanting barriers back toward potential climbers to deter climbing by small children.[47] To that end, Plaintiff points to two additional industry standards: (1) the International Building Code ("IBC") and (2) NFPA-301, promulgated by the National Fire Protection Association. See Response at 16-17; see also Mot. at 9-13.
The IBC is a building code, consisting of regulations and standards for land based buildings.[48] According to Plaintiff, the IBC § 1003.2.12.2 provides that open guards "shall have balusters or ornamental patterns such that a four-inch diameter sphere cannot pass through any opening," see Response at 17, though this portion of the IBC document is not part of the record.
NFPA-301 is the "Code for Safety to Life from Fire on Merchant Vessels."[49] It provides in pertinent part that open guards "shall have intermediate rails or an ornamental pattern such that a sphere 10 cm (3.9 in.) in diameter cannot pass through any opening."[50] However, the NFPA disclaims any legally binding effect of NFPA-301: NFPA documents "are developed through a consensus standards development process"; the NFPA "has no power, nor does it undertake, to police or enforce compliance with the contents of NFPA Documents. Nor does the NFPA list, certify, test, or inspect products, designs, or installations for compliance with this document."[51] The NFPA urges readers of NFPA-301 to "consult applicable *1352 federal, state, and local laws and regulations. NFPA does not, by the publication of its codes, standards, recommended practices, and guides, intend to urge action that is not in compliance with applicable laws."[52]
D. The Disney Wonder , Built by the Same Shipbuilder as the Liberty
Plaintiff also deposed Corynne E. Fouche, a corporate representative of Disney Cruise Lines. Ms. Fouche testified that the Disney Wonder was constructed by the Fincantieri company in Italy and entered service with Disney Cruise Lines in August 1999.[53] The Wonder 's exterior guardrails and barriers differ from the Liberty 's in that (1) many of the Wonder 's guardrails and barriers are slanted backward toward a potential climber, (2) certain guardrails and barriers on the Wonder utilize clear solid panels in lieu of horizontal open courses, and (3) other guardrails with open courses have spaces between the rails slightly under four inches.[54] Those features were implemented upon Fincantieri's construction of the Wonder.[55] The Wonder also had warning stickers on the ship to remind passengers not to climb, sit, or lean over the railing, as well as to supervise children.[56]
Carnival received schematics for the Liberty in June of 2004-several years after the Wonder was constructed by Fincantieri and put into service.[57]
LEGAL STANDARD
Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party." Adickes v. S.H. Kress & Co. , 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ; Rojas v. Florida , 285 F.3d 1339, 1341-42 (11th Cir. 2002).
The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial." See Celotex Corp. v. Catrell , 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; Poole v. Country Club of Columbus, Inc. , 129 F.3d 551, 553 (11th Cir. 1997) ; Barfield v. Brierton , 883 F.2d 923, 933 (11th Cir. 1989).
DISCUSSION
Plaintiff's one-count Complaint essentially alleges three theories of negligence: (1) negligently creating and maintaining an unreasonably dangerous condition (failing to child-proof the railing), (2) negligently failing to warn the parents of the danger, and (3) otherwise negligently failing to maintain the vessel in a safe condition. See Compl. ¶ 25. Because the Complaint, the moving papers, and the record evidence do *1353 not show any allegedly unsafe conditions besides the railing (and the related lack of warnings), the Court analyzes only the first two theories.
Carnival moves for summary judgment in its favor on the ground that Plaintiff lacks any evidence that Carnival was on notice of the specific risk-creating conditions with its railings. Carnival also seeks a summary judgment ruling that Plaintiff is not entitled to punitive damages.
A. Notice Requirement Under Maritime Tort Law
As the incident complained of in this action occurred aboard a ship sailing in navigable waters, federal maritime law applies. Everett v. Carnival Cruise Lines , 912 F.2d 1355, 1358 (11th Cir. 1990). Under federal maritime law "[a] carrier by sea ... is not liable to passengers as an insurer, but only for its negligence." Kornberg v. Carnival Cruise Lines, Inc. , 741 F.2d 1332 (11th Cir. 1984). To establish negligence, the plaintiff must prove: (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm. Chaparro v. Carnival Corp. , 693 F.3d 1333, 1336 (11th Cir. 2012).
As to the first element, a cruise ship only has a duty to protect passengers from dangers of which it has notice. Malley v. Royal Caribbean Cruises Ltd. , 713 F. App'x 905, 907 (11th Cir. 2017) ; Keefe v. Bahama Cruise Line, Inc. , 867 F.2d 1318, 1322 (11th Cir. 1989) ("[the standard of ordinary reasonable care] requires, as a prerequisite to imposing liability, that the carrier have actual or constructive notice of the risk-creating condition, at least where...the menace is one commonly encountered on land not clearly linked to nautical adventure.") (emphasis added).[58] ,[59] Thus, as an initial matter, the Court must determine whether Defendant had actual or constructive notice of the risk-creating condition.
A party must provide factual support and evidence as to a defendant's actual or constructive notice about a risk-creating condition. See Lipkin v. Norwegian Cruise Line Ltd. , 93 F.Supp.3d 1311, 1324 (S.D. Fla. 2015). The "mere implication" of actual or constructive notice is insufficient to survive summary judgment. See Adams v. Carnival Corp. , 2009 WL 4907547, at *5 (S.D. Fla. Sept. 29, 2009) (finding plaintiff needed "specific facts" rather than "mere implication" to demonstrate notice); accord O'Brien v. NCL (Bahamas) Ltd. , 288 F. Supp.3d 1302, 1310 (S.D. Fla. 2017). "Knowledge that the condition exists is not sufficient, the defendant must also know that the condition is dangerous." Malley , 713 F. App'x at 908.
*1354 Evidence that the cruise line knows that passengers can generally become injured on its ships does not put it on notice of the specific risk-creating condition in a given case. Taiariol v. MSC Crociere S.A. , 677 F. App'x 599, 601 (11th Cir. 2017). That passengers can become injured as a general proposition is not the specific notice required under Eleventh Circuit law. Joseph v. Carnival Corp. , No. 11-20221-CIV, 2011 WL 3022555, at *4 (S.D. Fla. July 22, 2011) (finding general allegations regarding prior deaths due to latent dangers of parasailing insufficient to impose upon cruise ship operator a duty to warn its passengers of every potential parasailing-related danger; taking such an argument to its logical conclusion, "[a] cruise line would have a duty to warn that one may be attacked by a shark while swimming in the ocean, may drown while snorkeling, may slip and fall in a local retail establishment, may get a stomach virus from eating in a local restaurant, and so on. The law does not impose such a duty....").
1. As to the claim of negligently creating and maintaining unreasonably dangerous railings, none of the record testimony proves Carnival's notice of any unreasonably unsafe conditions with the Liberty 's railings
Plaintiff points to various portions of deposition testimony from Carnival's corporate representative as proof of "Carnival's prior actual knowledge of the risk and dangers presented to small children passengers by open-course guardrails (including the subject guardrail)." Response at 12 (emphasis in original); see also id. at 13, 14 n.7 (referencing Carnival's purported "prior actual notice" or "prior actual knowledge"). But at best, this testimony shows that Carnival was aware that: (1) guardrails plausibly could be dangerous if there was excessive space between the courses or lower guardrails; (2) if a small child happened to go through or over the guardrails somehow, that child could be injured; (3) guardrails generally are climbable; (4) anyone would understand that a guard rail with a toddler climbing on it would be dangerous; and (5) it was a "fair assumption" that a child had tried to climb the railings at some point (though there is no evidence that any child was previously injured from climbing the Liberty 's railings). The testimony also shows that Carnival knew what the design and dimensions of its railings were, but this knowledge is legally insufficient to impute actual knowledge of danger. Malley , 713 F. App'x at 908. Nothing in the record permits the conclusion that Carnival had actual notice that the specific alleged risk-creating conditions-that is, (1) railing courses that are 7.87 inches apart, (2) an overall railing height of 43.3 inches, and (3) the absence of a solid barrier like plexiglass-were dangerous or defective.
The Eleventh Circuit has emphasized the import of specific notice in recent decisions. For example, in Malley , the alleged risk-creating condition was a high coaming (a raised divider). 713 F. App'x at 906. The plaintiff argued that the coaming was unreasonably high, with some testimony that the coaming was the height of "two normal steps" or "at least a foot tall." Id. The district court granted the defendant cruise ship's motion for summary judgment, concluding that the coaming was not unreasonably high and that, in any event, the height was open and obvious. Id. The plaintiff appealed, arguing that there remained genuine questions of fact over whether the defendant was negligent in creating and maintaining an unreasonably dangerous condition and whether the defendant was negligent in failing to warn of same. Id. at 906-07. The Eleventh Circuit found that the record lacked evidence that the cruise ship operator was on notice of *1355 the specific alleged danger. Id. at 908. Even though there was a railing on the coaming, and there may have been yellow and black warning tape on the coaming, this evidence showed only that the defendant "knew that the coaming was a step up from the ground," not that the cruise ship had notice that "the coaming was unreasonably high or that it created a risk to passengers." Id.
Similarly, in Taiariol , the plaintiff slipped and fell on nosing (a protective cover on the edge of a step to protect the edge from wear), which the plaintiff claimed was unreasonably slippery. 677 F. App'x at 600. The plaintiff produced evidence of prior incidents involving falls on the stairs, but none of them involved falls caused by slippery nosing. Id. at 601. The plaintiff also presented proof that the stairs had a "watch your step" sticker on them. Id. at 602. Again, this was not proof of notice of the specific danger: "Common sense dictates that the sticker served to caution persons on the ship that the step was there; that is, it warned passengers that the surface was not flat. There is no evidence that it was intended to warn passengers that the nosing may be slippery." Id.
Here, the specific risk-creating conditions are the alleged unreasonably wide distance between the courses, the alleged unreasonably short height of the railing, and the alleged unreasonably dangerous lack of plexiglass or other solid barriers. No record evidence shows notice of the danger of these particular characteristics-evidence of general railing dangers is not sufficient. See Joseph , 2011 WL 3022555, at *4.
The Court does not hold that a prior incident is the only way to prove notice. For example, passenger comment reviews or forms or reports from safety inspections could demonstrate notice if they spoke to potential safety concerns about the railing's course width, overall height, or lack of solid barrier. Cf. Cohen v. Carnival Corp. , 945 F.Supp.2d 1351, 1355 (S.D. Fla. 2013). But the evidence must demonstrate notice of the specific danger complained of. This Court's denial of summary judgment in Esanu v. Oceana Cruises, Inc. is distinguishable because there, the specific danger complained of was an unreasonably slippery deck, and the plaintiff made a prima facie showing of notice with proof of a "slippery when wet" sign. 49 F.Supp.3d 1078, 1079-81 (S.D. Fla. 2014).[60] There is no comparable evidence here.
While passenger Nancy Mitchell testified that Carnival provided general warnings during the muster drill for passengers to "not climb up rails,"[61] this general warning is not sufficient enough to create a genuine issue of fact as to notice that the specific configuration of the railing was dangerous. Cf. Krug v. Celebrity Cruises, Inc. , 745 Fed.Appx. 863, 866-68 (11th Cir. 2018) (affirming summary judgment for cruise line where there was "no evidence indicating that the general safety instruction given by [game host] was intended to warn passengers about the specific *1356 dangerous condition alleged by Plaintiff: the accelerating and decelerating in a small space on a ship"); Gorczyca v. MSC Cruises, S.A. , 715 F. App'x 919, 922 (11th Cir. 2017) ("Watch Your Step" warning stickers not evidence of notice that a lack of handrails was dangerous); Guevara v. NCL (Bahamas) Ltd. , No. 15-24294, 2017 WL 6597981 (S.D. Fla. Sept. 29, 2017) (granting summary judgment based on slip-and-fall down cruise ship steps despite permanently-affixed sign stated "ATTENTION! FOR YOUR SAFETY PLEASE USE THE HANDRAIL WATCH YOUR STEP" because the sign was too generic to support a finding of notice of the specific potential dangers of a "small step" from the landing to the deck nor of the deck's slippery nature).
2. Neither the non-binding industry standards nor the qualities of the Disney Wonder's guardrails prove Carnival's actual or constructive notice
While Plaintiff only expressly argues Carnival's alleged "actual" notice, Response at 12-14 & n.7, Plaintiff also points to two additional categories of evidence that, in the Court's view, are meant to demonstrate constructive notice. As explained below, none of the evidence actually proves constructive notice.
First, the IBC and NFPA do not prove notice. These documents would at best be proffered to show the general standard of reasonable care.[62] Though some district courts have found that voluntary non-binding standards may be used as evidence of constructive notice,[63] the Court is more convinced by the district court decisions finding that noncompliance with "recommended safety standards" does not, as a matter of law, establish that the cruise line had constructive notice of the unreasonable danger posed by its condition. See, e.g. , Zygarlowski v. Royal Caribbean Cruises Ltd. , No. 11-21340-CIV-SEITZ/SIMONTON, 2013 WL 12059607, at *6 (S.D. Fla. Feb. 25, 2013) ("The record shows, at most, that Royal Caribbean had notice that the ramp did not comply with the guidelines. This, however, is not equivalent to having notice of the danger that the ramp allegedly created for cruise passengers like [the plaintiff]."); Mirza v. Holland Am. Line Inc. , No. C11-1971MJP, 2012 WL 5449682, at *3-4 (W.D. Wash. Nov. 6, 2012) (non-binding industry standards do not establish actual or constructive knowledge of a risk-creating condition). The Court agrees that, taken to its logical conclusion, a rule that any non-binding industry standard that exists somewhere necessarily gives rise to constructive notice would turn the maritime notice requirement on its head. See Mot. at 13 (citing Keefe , 867 F.32d at 1322 ).
Second, the fact that Fincantieri designed and constructed the Disney Wonder -with its plexiglass barriers, sloped rails, narrower courses, and warning stickers-years before it constructed the Liberty does not prove that Carnival was on notice that the Liberty railings were dangerous. This "better mousetrap" argument usually arises in establishing the applicable *1357 standard of care. That Fincantieri implemented alternative rail designs on a Disney cruise ship is irrelevant to Carnival's notice of the alleged danger of the Liberty 's 43.3-inch-tall railing with 7.87-inch-wide open courses. Cf. Sofillas v. Carnival Corp. , No. 14-23920-CIV-SCOLA/OTAZO-REYES, 2016 WL 5408168, at *2 (S.D. Fla. Apr. 13, 2016) ("direct evidence relating to how other cruise lines operate the hot tubs on their ships is not relevant to the issue of Carnival's alleged negligence").[64] Even if Fincantieri's knowledge of the Wonder 's design could be imputed to Carnival (which it can't), Carnival was not obligated to adopt the Wonder 's design where the Liberty 's open-coursed railing complied with binding standards and no risk had manifested itself to show the railing to be a particularly dangerous condition. Cf. Lipkin , 93 F.Supp.3d at 1327.
3. As to the failure to warn claim, it is open and obvious that a child could be injured by playing on a railing
Further, while Carnival's motion is premised only on the notice issue, courts "need not even reach the defendant's actual or constructive notice of a risk-creating condition if they determine that condition was an open and obvious danger." Smith v. Royal Caribbean Cruises, Ltd. , 620 F. App'x 727, 730 (11th Cir. 2015) ; see also Smolnikar v. Royal Caribbean Cruises Ltd. , 787 F.Supp.2d 1308, 1322-23 (S.D. Fla. 2011) (duty to warn extends to dangers the cruise line "knows or reasonably should have known" but only insofar as those dangers are not apparent and obvious). The notice analysis above pertains to the allegedly dangerous conditions of the railing's design. As to the alleged negligent failure to warn claim, to the extent Plaintiff argues that Carnival should have warned passengers not to let their small children climb up or around an open-course guardrail, this danger is open and obvious.
In Smith , the defendant decided to swim in pool water that, as he had noticed, was murky. 620 F. App'x at 728, 730. The murkiness of the water caused the defendant to be unable to see clearly underwater, and as a result, he hit his forehead on the pool wall. Id. The district court granted summary judgment for the defendant cruise line, and the Eleventh Circuit affirmed without reaching the issue of notice. Id. at 730. The cruise line had no duty to warn plaintiff not to swim in murky water as the danger was open and obvious. Id. ; see also Malley , 713 F. App'x at 908-09 (concluding that it was open and obvious that plaintiff would need to take a large step to overcome the high coaming; "One can infer that a person who could see a step would also be able to see how high the step was."); Miller v. NCL (Bahamas) Ltd. , No. 1:15-cv-22254-UU, 2016 WL 4809347, at *8 (S.D. Fla. Apr. 6, 2016) (dangers of potential sudden ship movement were open and obvious such that defendant had no duty to warn). So too here with a climbable guardrail. Mr. Amy admits as much: he "immediately" would have stopped W.A. if he had noticed her climbing on the guardrail.[65]
B. Punitive Damages
For the reasons explained above, no reasonable jury could find Carnival liable for negligence under maritime law. As a result, the Court need not and does not reach the issue of punitive damages.
Accordingly, it is hereby *1358 ORDERED AND ADJUDGED that the Motion (D.E. 47) is GRANTED. The Court shall enter separate judgment forthwith.
DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of October, 2018.

Count II of the Complaint, wherein Elizabeth Amy claimed her own individual damages for the child's medical expenses, was dismissed as duplicative of Count I. D.E. 12.

D.E. 1 (the "Complaint") ¶ 2.

See Deposition of Elizabeth Amy ("E. Amy Dep."), D.E. 47-1, at 6:23-24, 8:24-25.

Id. at 6:16-7:6.

Id. at 7:3-9:8.

See Deposition of Wade Amy ("Wade Amy Dep."), D.E. 47-2, at 99:12-100:1.

Id. at 101:16-102:2.

Id. at 102:7-103:11.

"Courses" are the railing's horizontal white bars. The railing's vertical white bars are called "balusters," and the wooden handrails are called "balustrades." See Deposition of Suzanne Vazquez ("S. Vazquez Dep."), D.E. 47-7, at 27:1-8; see also Pl.'s Facts at 3 ¶ 16.

Id. at 18:24-19:6, 113:3-7; Deposition of William Amy ("William Amy Dep.") at 31:14-32:12; Deposition of Edward Burgos ("E. Burgos Dep.") at 12:2-24.

See Deposition of Aaron Mohanty, M.D. ("Dr. Mohanty Dep."), D.E. 56-10, at 38:20-25.

See Wade Amy Dep. at 74:16-75:13, 103:12-104:1.

Id. at 74:4-7, 75:11-14.

Id. at 94:2-5, 114:10-25.

E. Amy Dep. at 25:17-26:1.

Railing Specifications, D.E. 47-8; see also S. Vazquez Dep. at 62:8-13.

Railing Specifications, D.E. 47-8.

See S. Vazquez Dep. at 160:24-161:8.

Id. at 134:11-20.

See Deposition of Ben Clement ("B. Clement Dep."), D.E. 47-12, at 14:4-6.

See S. Vazquez Dep. at 75:18-76:19.

See id. at 132:14-133:8.

Id. at 188:13-23.

Id. at 192:4-19.

Id. at 189:12-17.

Id. at 189:18-190:3.

Id. at 179:23-180:25.

Id. at 156:13-157:14.

Id. at 42:16-20.

Id. at 63:2-5.

Id. at 182:17-183:7.

Id. at 32:1-5.

Id. at 32:13-25.

Id. at 63:20-64:22, 118:2-5; see also Carnival's First Suppl. Resps. to Pl.'s Initial Interrogs., D.E. 47-11 at No. 5.

See S. Vazquez Dep. at 63:6-65:6.

Id. at 190:4-6.

See id. at 57:10-58:15; see also Lloyd's Register Certification, D.E. 47-9, at 1.

S. Vazquez Dep. at 140:15-141:3.

See id. at 145:16-20.

46 U.S.C. § 3507(a)(1)(A).

See Regulation 25, D.E. 47-10, at (2).

See id. at (3).

46 C.F.R. § 72.40-5(a)

Id.

Lloyd's Register Certification, D.E. 47-9, at 1.

See id.

See Pl.'s Facts at 3-5 (¶¶ 18, 22, 24).

See Section 101.2 of the IBC 2000, D.E. 58-2.

D.E. 47-13 at 1.

Id. at 13 (§ 7.2.2.4.6.3).

Id. at 2.

Id. at 3.

See Deposition of Corynne E. Fouche, Corporate Representative for Magical Cruise Company, Ltd. d/b/a Disney Cruise Line, D.E. 56-7 at 9:21-10:2.

See id. at 13:21-21:18.

See id. at 21:19-23:15.

See id. 25:1-26:17.

See S. Vazquez Dep. at 131:10-23.

While more recent Eleventh Circuit authority employs language suggesting the notice requirement is a separate, additional element of a negligence claim, see Pizzino v. NCL (Bahamas) Ltd. , 709 F. App'x 563, 565 (11th Cir. 2017) (recounting the traditional four negligence elements and then stating that, "[i]n addition to these elements," a plaintiff must demonstrate actual or constructive notice), the Court adheres to Keefe 's description of the notice requirement as a component of the traditional duty element, see Keefe , 867 F.2d at 1322.

Plaintiff contends Keefe is wrongly decided insofar as it imposes a lower duty of care for marine common carriers than for non-marine common carriers. See Response at 4-9. Without passing on the merits of this contention, the Court is bound by Keefe and applies it faithfully. See, e.g. , McGinley v. Houston , 361 F.3d 1328, 1331 (11th Cir. 2004) (noting that a "circuit court's decision binds the district courts sitting within its jurisdiction").

Plaintiff also cites to this Court's denial of summary judgment in Bonilla v. Seven Seas Cruises , 38 F.Supp.3d 1340 (S.D. Fla. 2014). As to notice, the Court in that case concluded that because the cruise ship knew that the subject threshold existed, a jury necessarily could determine that the defendant knew or should have known that the threshold was dangerous. Id. at 1343. This kind of inferential leap was rejected by the Eleventh Circuit in 2017. See Pizzino , 709 F. App'x at 565-67 (holding that the line of cases beginning with Rockey v. Royal Caribbean Cruises, Ltd. , 2001 WL 420993 (S.D. Fla. 2001), which cases stated that no notice was required where the cruise line created the condition at issue, "were wrongly decided").

D.E. 59-9 at 45:18-25, 46:10-24.

But these particular standards would be inadmissible at trial, as a cruise ship is not a land-based structure (such that the IBC is inapplicable) and there is no allegation that W.A.'s injury resulted from a breach of fire safety standards. See Whelan v. Royal Caribbean Cruises, Ltd. , No. 1:12-cv-22481-UU, 2013 WL 5595938, at *3-4 (S.D. Fla. Aug. 12, 2013). The Court notes that Carnival has moved in limine to preclude the introduction of these and other non-binding safety standards. D.E. 58 at 2-4.

See, e.g. , Holderbaum v. Carnival Corp. , 87 F.Supp.3d 1345 (S.D. Fla. 2015) ; see also Cook v. Royal Caribbean Cruises, Ltd. , No. 11-20723-CIV, 2012 WL 1792628, at *3-4 (S.D. Fla. May 15, 2012) (Goodman, M.J.).

The Court notes that Carnival has moved in limine to preclude evidence regarding the Disney Wonder. D.E. 58 at 4-7.

Wade Amy Dep. at 94:2-5, 114:10-25.