**Lottie EVERETT and Robert Everett, Plaintiffs–Appellees, Cross–Appellants,**

v.

**CARNIVAL CRUISE LINES, Defendant–Appellant, Cross–Appellee.**

No. 89–5153.

United States Court of Appeals, Eleventh Circuit.

Sept. 25, 1990.

Brooks C. Miller, Kelley, Drye & Warren, Miami, Fla., for defendant-appellant cross-appellee.

Bruce K. Anders, Wilkes–Barre, Pa., W. Sam Holland, James F. Asher, Kimbrell & Hamann, Miami, Fla., for plaintiffs-appellees cross-appellants.

Before JOHNSON and HATCHETT, Circuit Judges, and SMITH *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Defendant, Carnival Cruise Lines, Inc. ("Carnival"), appeals the district court's denial of its motion for directed verdict and

---

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

its motion for a new trial. Plaintiffs, Lottie and Robert Everett ("the Everetts"), cross appeal the district court's grant to defendant of remittitur.

## I. STATEMENT OF THE CASE

### A. *Background*

The Everetts are residents of Pennsylvania. Mrs. Everett is fifty years old and until May 1985 was a factory worker. Carnival Cruise Lines is a Panamanian corporation with its principal place of business in Miami.

On January 13, 1986, the Everetts were passengers on Carnival's cruise ship "Holiday." While walking along a passenger walkway on the Lido deck of the ship, Mrs. Everett tripped and fell, sustaining injuries to her left shoulder and arm. The ship put into port the next day where Mrs. Everett saw a physician who advised her to return home for treatment. The Everetts flew home to Pennsylvania, and Mrs. Everett was hospitalized.

The object Mrs. Everett tripped over was a metal threshold cover for a fire door.[1] This threshold traverses the deck from the inboard wall of the ship to the outboard wall, cutting across the passenger walkway and through tables and chairs adjoining the walkway. The threshold is approximately 7/8 of an inch high and has sloping sides extending approximately one inch on either side. At the time of the accident, the threshold had affixed to it yellow and black signs saying "Watch Your Step." But the signs were worn and not highly visible. The threshold itself was dented from the traffic of passengers and dining carts.

Over the course of the next several months, Mrs. Everett underwent two operations and physical therapy treatment. Nevertheless, she lost forty to fifty percent of the function of her arm and shoulder.

### B. *Procedural History*

The Everetts initially brought this action against Carnival in state court in Pennsylvania, seeking damages for personal injury and loss of consortium. Carnival removed on the ground of diversity to a United States District Court in Pennsylvania. The case was then transferred to the United States District Court for the Southern District of Florida.[2]

The district court held a jury trial in November 1988. The jury found the Everetts' injuries to be fifty-five percent due to Carnival's negligence and forty-five percent due to Mrs. Everett's negligence. The jury found Mrs. Everett's damages to be $400,000 and Mr. Everett's to be $75,000.

In January 1989, the district court entertained post-trial motions. Carnival moved, *inter alia*, for a new trial on the grounds that the court did not properly instruct the jury that Carnival could be held liable only if it had actual or constructive notice of a defect and that the court incorrectly admitted evidence of subsequent remedial repairs to the threshold. The court denied these motions. The court, however, granted Carnival's motion for remittitur. The court reduced Mrs. Everett's damages by $30,987.93, the amount the jury had apparently awarded for future loss of unemployment compensation, finding that inclusion of that figure in the damage award had been improper. The court then entered judgment for the Everetts in the amount of $244,206.64.

---

1. The International Convention for the Safety of Life at Sea ("SOLAS") requires installation of fire doors on ships. *See* 46 U.S.C.A. § 3505 (prohibiting departure of passenger vessels not complying with SOLAS from United States ports). In the event of a fire, this sliding door, which would otherwise be retracted into the wall, is released and slid shut in order to close off the burning area of the ship so that smoke, heat, and fire do not spread. Lloyd's Register of Shipping, which certifies compliance with SOLAS, required the addition of this particular fire door to the shipbuilder's plans for the "Holiday"

before building commenced. Because there was no bulkhead under the deck where the fire door was to be installed, a steel beam had to be added to the deck floor to provide the rigidity needed to allow the fire door to function properly. The threshold for the door covers this beam.

2. Transfer was based on a forum selection clause printed on the back of the Everetts' cruise line tickets.

Carnival appeals the court's denial of its motions for a new trial. The Everetts cross appeal the court's grant of remittitur. Because we find the issue of the improper jury instruction to be dispositive of the case, we need not address the issues of subsequent remedial repairs or remittitur.

## II. DISCUSSION

 In reviewing the district court's jury instructions, this Court should ask whether the charges, taken as a whole, sufficiently instructed the jury so that jurors understood the issues and were not misled. *Dempsey v. MAC Towing, Inc.*, 876 F.2d 1538, 1542 (11th Cir.1989).

The district court gave the following instruction to the jury:

> To recover for injuries sustained in her fall, Lottie Everett must show either that Carnival Cruise Lines, Inc. (1) had actual notice of the condition of which she complains; OR (2) that the dangerous condition existed for such a length of time that in the exercise of ordinary care, Carnival Cruise Lines should have known of it; OR (3) that Carnival Cruise Lines negligently created or maintained its premises.

Carnival objected to the third part of this instruction on the theory that its liability must be predicated upon notice. The district court overruled that objection at trial and refused to grant Carnival's motion for a new trial on the ground that notice could be imputed to Carnival under Florida law.

The district court based its instruction on *Pogue v. Great Atlantic & Pacific Tea Co.*, 242 F.2d 575 (5th Cir.1957), in which the former Fifth Circuit analyzed Florida tort law in the context of a slip and fall case and held that a premises owner who creates a dangerous condition is charged with knowledge of its existence. The court also cited a Florida state court case which held that an owner of a business premises who creates or maintains a dangerous condition breaches its duty to invitees. *Holmes v. Don Mealey Chevrolet, Inc.*, 468 So.2d 552 (Fla.Dist.Ct.App.1985).

 The district court's view that Florida law controlled this issue, however, was incorrect. Because this is a maritime tort, federal admiralty law should control. Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985). *See also Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 408–09, 3 L.Ed.2d 550 (1959); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320–21 (11th Cir. 1989).

 The federal maritime law applicable to this issue was clearly set out in *Keefe v. Bahama Cruise Line, supra*, in which the plaintiff sued to recover for injuries sustained when she slipped and fell on the dance floor of a cruise ship. The court there held that the "benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322.[3] The district

---

**3.** The district court, however, did not have the benefit of the *Keefe* opinion in rendering its decision. *Keefe* was decided on March 15, 1989, whereas the district court rendered its judgment some two months earlier on Jan. 25, 1989. Under the test set out in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971), in determining whether to give retroactive effect to a judicial decision, a court should consider (1) whether that decision creates a new principle of law by overruling past precedent or deciding an issue of first impression the resolution of which was not foreshadowed; (2) whether such retroactive application would enhance or inhibit the purpose behind the new rule; and (3) whether retroactive application would produce substantial inequitable results. The first prong of the *Chevron* test indicates that application of *Keefe* to the instant case should not be barred. As the *Keefe* court points out, the former Fifth Circuit held fifteen years ago that a vessel owner owed passengers a duty of reasonable care (as opposed to a higher duty often accorded seamen to provide

court's instruction clearly went beyond the *Keefe* standard and was therefore erroneous.

 The remaining question, then, is whether the third part of the instruction could have misled the jurors under the standard articulated in *Dempsey v. MAC Towing, Inc., supra.* The Everetts argue that the instruction, when taken as a part of the whole, is not inconsistent with the requirements of *Keefe.* They return to the theory articulated by the district court in its reliance on *Pogue* that notice of the defect can be imputed to Carnival inasmuch as it created the threshold and maintained it. In other words, Carnival should have known that there was a danger of passenger injury because it was the owner and operator of the ship. Therefore, the Everetts argue, the jury instruction could not have misled the jurors because it can be assumed that Carnival had notice. The reasoning is circular and defeats the limitation on the shipowner's liability imposed by *Keefe.*

The Everetts also argue that the instruction was harmless because evidence of Carnival's knowledge that the threshold was defective was presented at trial. There was thus the possibility or even probability that the jury predicated liability on this evidence of notice. But this fact does not eliminate the possibility that the jury may have found Carnival liable on the basis of the third instruction—mere creation or maintenance of a defect—inasmuch as the instructions are disjunctive. Because there remains uncertainty as to whether the jury was misled, the error cannot be deemed harmless. *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1372 (5th Cir.1981). Carnival is therefore due a new trial.

a seaworthy vessel). *Gibboney v. Wright,* 517 F.2d 1054, 1059 (5th Cir.1975). The *Keefe* court also points out that the Eleventh Circuit had previously held in *Kornberg* that the vessel owner "is not liable to passengers as an insurer, but only for its negligence." *Kornberg,* 741 F.2d at 1334. Therefore, *Keefe* cannot be said to have clearly overruled a past precedent or decided an issue of first impression which was not foreshadowed. Second, the purpose behind the *Keefe* notice requirement is that shipowners

## III. CONCLUSION

We REVERSE the district court's denial of Carnival's motion for a new trial on the ground that its jury instruction was erroneous. We REMAND the case to the district court for a new trial.

should not be made the insurers of passenger safety. *Keefe,* 867 F.2d at 1322; *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63, 65 (2d Cir.1988). This purpose would be furthered by retroactive application in the instant case. Finally, retroactive application of *Keefe* would not produce a substantial inequitable result inasmuch as the Everetts will have an opportunity to show that Carnival had notice of a defect on remand.