[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16812
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-24696-FAM


ANTOINETTE PIZZINO,

                                                      Plaintiff - Appellant,

versus

NCL (BAHAMAS) LTD.,
a Bermuda Company,
d.b.a. Norwegian Cruise Line,

                                                      Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 20, 2017)

Before TJOFLAT, WILLIAM PRYOR and JILL PRYOR, Circuit Judges.

PER CURIAM:

After slipping and falling while aboard a cruise ship, Antionette Pizzino filed suit against the cruise line, NCL (Bahamas) Ltd. ("Norwegian"), alleging that she slipped in an area where an Norwegian employee had spilled water. Following a trial, the jury found Norwegian not liable. Pizzino now appeals, arguing that the district court erred in declining to give a jury instruction that Norwegian need not have been on actual or constructive notice of the dangerous condition to be liable if Norwegian created the dangerous condition. After careful review, we affirm the district court's judgment.

## I.    BACKGROUND

The Pizzinos took a cruise on one of Norwegian's ships, the Sky. The Sky contained a coffee bar where Dimitur Hulea worked as a part-time barista. One of Hulea's responsibilities was to clean the coffee bar after it closed at midnight. Because the coffee bar did not have the appropriate facilities, to clean the coffee bar Hulea had to retrieve two buckets of liquid (one containing a water/bleach mixture, and one containing only water) from the Sky's casino. In doing so, Hulea had to carry the buckets, one at a time, down a corridor that connected the casino to the coffee bar. Hulea filled the buckets to three quarters full. He testified that he never spilled liquid from the buckets when transporting them down the corridor.

Closed circuit television footage from the night when Pizzino slipped shows Hulea walking a bucket to the coffee bar at approximately 12:38 a.m. Although he

2

was not present at that time, Pizzino's husband, David, was permitted to testify based on the video that the bucket appeared to tilt to the left and hit Hulea's right knee as he approached the coffee bar. About ten minutes later, Hulea left the coffee bar with two empty buckets and returned with one bucket filled with liquid.

About three and a half minutes after Hulea returned with the second bucket of liquid, Pizzino and David walked down the corridor from the casino toward the coffee bar. Pizzino did not notice any liquid on the ground as she walked. As she neared the coffee bar, she fell forward onto the ground, resulting in injuries including two broken wrists. At that point, Pizzino noticed that there was liquid on the floor where she fell; more specifically, she testified that there were four to six inch puddles on the floor of the corridor. David also testified that there was water on the floor where Pizzino slipped. There was no "wet floor" sign present near the coffee bar.

After her fall, Pizzino told Hulea to wipe the floor before another person fell, and David pointed out the water on the floor to Hulea. Hulea then wiped down the floor where Pizzino had slipped. He testified that he did so even though he did not see any water on the ground; he simply wanted to placate David, who was upset.

Pizzino filed suit against Norwegian, alleging that it had negligently created and failed to eliminate a hazardous condition, the wet spot near the coffee bar, and that Norwegian's negligence proximately caused her injuries. At trial, the district

court denied Norwegian's motion for a directed verdict and the case proceeded to a

jury.  The district court gave the jury the following instruction with regard to

notice:

> To recover for injuries sustained in her fall, the plaintiff, Mrs. Pizzino, must prove either, first, that Norwegian had actual notice of the alleged risk-creating condition of which she complains or, alternatively, the second part, that the dangerous condition existed for such a length of time that in the exercise of ordinary care Norwegian should have known of it.

Pizzino requested the following additional instruction:

> Where a cruise ship operator created the unsafe or foreseeably hazardous condition, a plaintiff need not prove notice in order to prove negligence.

The district court denied her request.  The jury subsequently returned a

verdict for Norwegian.  Pizzino now appeals the district court's failure to

give her requested jury instruction.

## II.    STANDARD OF REVIEW

While we review *de novo* whether a jury instruction was a correct statement

of law, we review only for an abuse of discretion a district court's refusal to give a

requested jury instruction.  *United States v. Hill*, 643 F.3d 807, 850 (11th Cir.

2011).  "An abuse of discretion is committed only when (1) the requested

instruction correctly stated the law, (2) the instruction dealt with an issue properly

before the jury, and (3) the failure to give the instruction resulted in prejudicial

4

harm to the requesting party." *Finnerty v. Stiefel Labs., Inc.*, 756 F.3d 1310, 1322 (11th Cir. 2014).

## III.    DISCUSSION

This case is governed by federal maritime law, under which the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances. *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015). To prevail on her negligence claim, Pizzino was required to prove that (1) Norwegian had a duty to protect her from a particular injury, (2) Norwegian breached that duty, (3) the breach actually and proximately caused her injury, and (4) she suffered actual harm. *Id.* at 1280.

In addition to these elements, Pizzino was required to demonstrate "that [Norwegian] had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). Pizzino argues—and a number of district courts in this circuit have held—that a cruise ship operator need not have actual or constructive notice of the hazardous condition to be liable if the operator itself created the condition. *See, e.g., Rockey v. Royal Caribbean Cruises, Ltd.*, 2001 WL 420993, at *4-5 (S.D. Fla. 2001). Pizzino therefore maintains that the district court erred in

5

declining to give a jury instruction reflecting that exception to the notice requirement.  We disagree.

This case is controlled by *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990), where we considered the notice requirement's contours in light of facts similar to those confronting us here.  In *Everett*, the plaintiff tripped over a metal threshold cover for a fire door.  *Id.* at 1357.  The threshold had been installed by the defendant cruise ship operator, and there was no indication that the plaintiff's fall was the result of anything except the presence of the threshold.  *Id.* At trial, the district court gave an instruction to the jury indicating that the plaintiff was required to prove that the defendant had actual or constructive notice, or "that Carnival Cruise Lines negligently created or maintained its premises."  *Id.* at 1358. The jury found for the plaintiff and the district court denied the defendant's motion for a new trial on the ground that the court's notice instruction was erroneous.  *Id.* at 1357.

On appeal, we reversed the district court's denial of the defendant's motion for a new trial.  We held that the district court erroneously relied on Florida law— and not federal maritime law—in concluding that a cruise line operator could be liable for negligence without actual or constructive notice as long as it "negligently created or maintained its premises."  *Id.* at 1358.  That conclusion, we held, contravened *Keefe*'s holding that "'as a prerequisite to imposing liability, [] the

carrier [must] have had actual or constructive notice of the risk-creating condition.'" *Id.* (quoting *Keefe*, 867 F.2d at 1322). We also rejected the notion that "notice of the defect" could be imputed to a cruise ship operator "inasmuch as it created" the defect and maintained it, explaining that such a rule would also contravene *Keefe*. *Id.* at 1359. Ultimately, we held that the defendant was entitled to a new trial because of "the possibility that the jury may have found [the defendant] liable on the basis of . . . mere creation or maintenance of a defect." *Id.*

Here, Pizzino asserts that the district court was required to give an instruction that we explicitly rejected in *Everett*, specifically, that a cruise ship operator can be liable for negligence without notice if it created the dangerous condition that injured the plaintiff. Pizzino argues that *Everett* is distinguishable in two ways. First, Pizzino points out that the instruction we rejected in *Everett* indicated that a cruise ship operator could be liable if it "negligently created or maintained its premises" as a whole, while Pizzino's requested instruction would permit liability if the operator created the specific "unsafe or foreseeably hazardous condition" that injured her. This, however, is a distinction without legal significance. Although the specific instruction we addressed in *Everett* is slightly different than the instruction at issue here, the *rule* we crafted in *Everett* is broad enough to render both instructions misstatements of law. In *Everett*, we reasoned that creation of a defect—and not simply creation or maintenance of the premises

7

as a whole—was insufficient to obviate the notice requirement. *Id.* at 1358 (holding that notice of a defect could not be imputed to a defendant "inasmuch as it created" the defect); *see also id.* at 1359 (deeming unacceptable the risk that the jury found the defendant liable based on "mere creation . . . *of a defect*" (emphasis added)). *Everett*'s rule therefore extends beyond that case's facts, reaching Pizzino's requested instruction.

Second, Pizzino argues that *Everett* does not control because the instruction she requests is not "disjunctive." Pizzino presumably makes this distinction because of language in *Everett* noting that jury instructions that permit liability absent notice where the defendant "mere[ly] creat[ed] or mainten[ed] [] a defect" contravene maritime law "inasmuch as the instructions are disjunctive." *Id.* The problem with Pizzino's argument is that her requested instruction *is* disjunctive, as it creates an additional circumstance—mutually exclusive with the defendant's having actual or constructive notice—under which the defendant could be liable. Under Pizzino's proffered rule, a cruise ship operator could be liable if it had actual notice, if it did not have actual notice but did have constructive notice, or if it had neither actual nor constructive notice but created the relevant dangerous condition. The meaning of Pizzino's requested instruction would be no different if it read:

> To recover for injuries sustained in her fall, the plaintiff, Mrs. Pizzino, must prove either, first, that Norwegian had actual notice of the

8

alleged risk-creating condition of which she complains or, alternatively, the second part, that the dangerous condition existed for such a length of time that in the exercise of ordinary care Norwegian should have known it, **or, alternatively, Norwegian created the unsafe or foreseeably hazardous condition.**

In essence, then, Pizzino's argument is that this case is distinct from *Everett* because her requested instruction did not involve an additional "or" clause at the end of the district court's notice instruction. There is no legal basis for such a distinction.

Pizzino also argues that numerous district courts—all in the Southern District of Florida—have concluded that a cruise ship operator can be liable absent notice where it created a dangerous condition, notwithstanding *Everett*. The genesis of these cases is *Rockey*, in which the court concluded that an operator could be liable without notice where the plaintiff was struck by a falling electronic bingo board. 2001 WL 420993, at *2. The court distinguished *Everett* by noting that *Everett* featured "an otherwise safe area . . . made hazardous by the presence or emergence of an object," as opposed to the operator's "knowing selection of the manner and location of the board's placement and storage," which "created an unsafe or foreseeably hazardous condition." *Id.* at *4. But this distinction is belied by *Everett*'s facts. In *Everett*, the dangerous condition—the metal threshold—was created by the cruise ship operator, which was responsible for its installation and placement. *Everett*, 912 F.2d at 1357 & n.1. We nonetheless rejected the

9

possibility that the operator could be liable in the absence of actual or constructive notice. *Rockey*, then, rests on a specious distinction between an ill-placed bingo board and an ill-placed metal threshold. Because there is no exception to *Everett* that would allow liability based on one but not the other, we have no trouble concluding that *Rockey* and its progeny were wrongly decided.

Finally, we easily dispose of Pizzino's arguments that *Sorrels*, 796 F.3d at 1287, controls the outcome of this case. In *Sorrels*—where Norwegian was also the defendant—Norwegian did not challenge the district court's holding that an operator could be liable without notice if it created the relevant hazardous condition. *Id.* at 1286-87. After reviewing the facts, we remanded the case to the district court to determine whether the record would permit a reasonable jury to find that Norwegian created the dangerous condition. *Id.* Pizzino argues that Norwegian's posture in *Sorrels* constitutes an admission that her preferred rule applies. But a decision by a party not to raise an argument in one case does not preclude it from raising that argument in an entirely separate case. Pizzino also argues that we would not have remanded *Sorrels* to the district court to determine whether enough evidence supported the plaintiff's creation theory if whether the operator created the dangerous condition had no legal significance. We explicitly noted, however, that because Norwegian did not challenge the district court's conclusion regarding the creation rule, we were "apply[ing] that standard without

10

passing on its correctness." *Id.* at 1287. Here, by contrast, the rule's correctness is properly before the court.

We recognize that there may be sound policy justifications supporting the rule for which Pizzino advocates. *See, e.g., McDonough v. Celebrity Cruises, Inc.*, 64 F. Supp. 2d 259, 264 (S.D.N.Y. 1999) ("To require a plaintiff to also establish notice in a case where the defendant's own activities created a foreseeable and unreasonable risk of harm . . . would have the absurd result that negligence actions could only be brought after a dangerous condition or practice created by a defendant claimed a previous victim, whose own recovery would be barred by the absence of notice."). But Pizzino's position simply cannot be squared with our prior precedent. We therefore affirm the district court's judgment.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**