JILL PRYOR, Circuit Judge, concurring:
I concur fully in the majority's opinion. I write this special concurrence to respond in more detail to the dissent's argument that our decision today is in tension with the admiralty law of this circuit.
*724 Plaintiff Pablo Guevara contends that defendant NCL (Bahamas), Inc. was negligent because it failed to warn him of a hidden step down on its cruise ship, the Spirit . To determine whether the district court erred in granting summary judgment to NCL, we must decide whether NCL owed Guevara a duty.
Like the dissent, I begin with the premise that a cruise ship operator "is not liable to passengers as an insurer." See Keefe v. Bahama Cruise Line, Inc. , 867 F.2d 1318, 1322 (11th Cir. 1989) (internal quotation marks omitted). But a cruise ship operator remains liable for its negligence and thus must exercise "ordinary reasonable care under the circumstances." Id. The reasonable care standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition," at least when the menace is commonly encountered on land. Id. The dissent accepts that when a cruise ship operator has actual or constructive notice of a dangerous condition, it generally owes a duty to warn its passengers of that condition.
Whether NCL had a duty to warn Guevara of the step down turns on whether it had notice of the dangerous condition. Guevara contends that NCL had notice of the dangerous condition based on a sign installed immediately before the step down that cautioned "WATCH YOUR STEP." As an initial matter, the entire panel agrees that a reasonable jury could find that the sign warned about the dangerous condition created by the step down (as opposed to some other dangerous condition). See Dissent at 34 (observing that the risk created by the step down "came with a warning").
The dissent nonetheless concludes that NCL had no notice of the dangerous condition because the ship's manufacturer, rather than NCL, installed the sign. But I see no reason to require that NCL must have installed the sign for a factfinder to conclude that NCL had notice. A reasonable jury could infer that NCL understood or at least should have understood from the sign that the step down created a dangerous condition. After all, the dissent acknowledges, "[w]arning signs are meant to be seen," id. , and this sign could be seen by the ship's crew and passengers alike.
Instead of allowing this question of fact to be decided by a jury, the dissent would prefer a legal rule that a cruise ship operator can be put on notice of a dangerous condition by a warning sign only if the ship operator installed the warning sign. See id. at 35 ("Because the boat came with the warning sign, [NCL] never took any affirmative act in connection with the alleged risk and cannot be held liable for it."). The dissent's bright-line rule would require courts to ignore facts establishing that the cruise ship's officers and crew learned or should have learned of the dangerous condition from the sign. Nothing in our precedent establishes such a rule. We have held that a cruise ship operator's affirmative act of warning of a risk is sufficient to establish that it had notice of a danger. See, e.g. , Sorrels v. NCL (Bahamas) Ltd. , 796 F.3d 1275, 1288-89 (11th Cir. 2015) (concluding that a cruise ship operator had notice that the ship's pool deck could be slippery after rain from evidence that crew members sometimes posted warning signs on the pool deck after rain). But we have never held that it is necessary that a cruise ship operator have taken an affirmative act regarding a risk to establish that it had knowledge of the danger. To the contrary, we have recognized that a cruise ship operator may be put on notice of a danger after the dangerous condition causes an injury, even though the operator has taken no affirmative act. See *725 Caron v. NCL (Bahamas), Ltd. , 910 F.3d 1359, 1370 (11th Cir. 2018) (accepting that that prior reports of similar incidents are sufficient to provide a cruise ship operator with notice of a dangerous condition); see generally Chimene v. Royal Caribbean Cruises, Ltd. , No. 16-23775-CV, 2017 WL 8794706, at *4 (S.D. Fla. Nov. 14, 2017) (concluding that cruise ship operator had notice of dangerous condition created by zip line from prior reports of substantially similar incidents).
The dissent contends that our previous decision in Everett v. Carnival Cruise Lines , 912 F.2d 1355 (11th Cir. 1990), bars us from concluding that a cruise ship operator could receive notice of a dangerous condition from a sign that it did not install. In that case, a cruise ship passenger sustained injuries when she tripped over a metal threshold on the ship. Id. at 1357. The passenger argued that the cruise ship operator had knowledge of the dangerous condition because it created and maintained the threshold. Id. at 1359. We rejected this argument, explaining that accepting the passenger's argument would effectively "defeat[ ]" the notice requirement. Id. Although we recognized in Everett that a cruise ship operator does not have knowledge of a dangerous condition simply because the condition is present on the ship that it maintains, Everett did not address whether a warning posted on a cruise ship-that is, a posting identifying a condition as dangerous-could put the operator on notice of that dangerous condition.[1]
The majority opinion runs afoul of the rule established by Everett , the dissent argues, because if the warning sign put NCL on notice, it must have also put Guevara on notice, unless NCL's ability to understand the sign differed from Guevara's. And "the only thing that differentiates Guevara from [NCL]," according to the dissent, "is [NCL's] operation of the Spirit ." Dissent at 36. The dissent glosses over another important difference between NCL and Guevara, however. A reasonable jury could find that NCL received notice before Guevara's fall when the Spirit's officers and crew members encountered the area with the sign in daylight or at night time when the sign was lit. In contrast, a reasonable jury could find that Guevara encountered this area just once-the night of the incident when the light above the sign was not lit, which made the sign unreadable.
The dissent also asserts that NCL should not be held liable because it was due only to "bad luck" that the light was out and Guevara could not see the sign. Id. at 34. This argument addresses a different issue, though: whether, assuming NCL had a duty to warn, the sign was sufficient to discharge NCL's duty. At trial, the jury could find that the warning sign was visible *726 and adequately warned Guevara of the danger, meaning that NCL had discharged its duty to warn. But whether NCL gave an adequate warning, assuming it had a duty to warn, does not tell us whether it had notice and thus owed such a duty. See Chaparro v. Carnival Corp. , 693 F.3d 1333, 1336 (11th Cir. 2012) (identifying duty and breach as separate elements of a negligence claim).
Returning to where it began, the dissent closes with the concern that our decision will make a cruise ship operator a general insurer liable for every warning any manufacturer places on a ship. To answer that concern, the dissent would adopt a bright-line rule that a cruise ship operator can never receive notice of a dangerous condition from a warning sign installed by a manufacturer or other third party. By eliminating one way in which a cruise ship operator could actually gain knowledge of a danger, the dissent's approach defies common experience and would erode the long-standing principle of admiralty law that a cruise ship operator must warn its passengers of known dangerous conditions. Because questions of fact remain about whether the warning sign installed by the ship's manufacturer put NCL on notice of the danger associated with the step down, I voted with the majority to allow the case to go to a jury.
I want to emphasize that the majority's decision today is narrow. Even assuming the dissent is correct that the decision means a cruise ship operator owes a duty to warn of any danger for which a warning is posted on a ship,[2] only in rare cases will a passenger attempting to hold a cruise ship operator liable for a breach of that duty get past summary judgment. To get to trial, the passenger will have to come forward with evidence, not speculation, that the warning was sufficiently visible to put the cruise ship operator on notice yet was not visible to the passenger. Guevara has carried this burden given the cruise ship operator's "bad luck" that the light over the sign went out, but I doubt many operators will be so unlucky.

The dissent also relies on our unpublished decision in Pizzino v. NCL (Bahamas) Ltd. , 709 F. App'x 563 (11th Cir. 2017) (unpublished). Like Everett , Pizzino did not address whether a warning sign placed by a third party can put a cruise ship operator on notice. In Pizzino , a passenger sued a cruise ship operator for negligence after slipping on the cruise ship's floor. Id. at 564. The hazard was created by water that appeared to splash out of a ship employee's bucket. Id. at 563-64. After the district court instructed the jury that the passenger had to show that the operator had actual or constructive notice of the dangerous condition, the jury returned a verdict in favor of the cruise ship operator. Id. at 564. The passenger appealed, arguing that the cruise ship operator could be held liable on the basis that its employee had created the dangerous condition by spilling water on the floor. Id. We affirmed, concluding that the district court had properly instructed the jury that a cruise ship operator must have actual or constructive notice of a dangerous condition, even if it created the danger. Id. at 566-67. There was no posted warning in Pizzino that arguably put the cruise ship operator on notice of the dangerous condition, so Pizzino did not decide or address the issue we face here.

Some warnings posted by third parties on a ship would be insufficient to put a cruise ship operator on notice of the dangerous condition identified by the warning. To take the dissent's example, a sticker placed on a lamp in a cabin stateroom warning that the lamp becomes hot may not give the cruise ship operator actual or constructive notice of the danger. The question of whether such a sticker would put the cruise ship operator on notice could depend on factual issues such as: the access that officers and crew had to the cabin stateroom to see the sticker, the size of the sticker, and the location of the sticker (in this example, the warning could be hidden by the lamp shade). In contrast, here there is ample evidence from which a reasonable jury could infer that the warning sign informed NCL of the danger caused by the step down because the warning sign was large and prominently posted in a public area that was accessible to anyone on the ship.