SUTTON, Circuit Judge, concurring in part and dissenting in part:
As a visiting judge, I am reluctant to quibble over the meaning of local law. And as a visiting judge from a largely land-locked and exclusively fresh-water circuit, I am especially reluctant to quibble over the meaning of admiralty law with judges from a circuit whose every State touches the sea. In overcoming that hesitation, I take some comfort in the reality that the Miami-based district court judge who handled this case reached the same conclusion I do and the view that one does not have to be a seaworthy judge to see some tension between today's decision and the admiralty law of this circuit.
Eleventh Circuit admiralty law establishes three related propositions when it comes to slip-and-fall accidents at sea. The first is that cruise ships are not general *727 insurers of their passengers. See Keefe v. Bahama Cruise Line, Inc. , 867 F.2d 1318, 1322 (11th Cir. 1989) (per curiam). The second is that cruise ships may be liable only if they knew or should have known about the danger that caused the accident. Id. The third is that such knowledge does not arise from buying and operating a ship with pre-existing signage about pre-existing risks. See Everett v. Carnival Cruise Lines , 912 F.2d 1355, 1358-59 (11th Cir. 1990) ; see also Malley v. Royal Caribbean Cruises Ltd. , 713 F. App'x 905, 908 (11th Cir. 2017) (per curiam); Pizzino v. NCL (Bahamas) Ltd. , 709 F. App'x 563, 566-67 (11th Cir. 2017) (per curiam); cf. Lipkin v. Norwegian Cruise Line Ltd ., 93 F.Supp.3d 1311, 1323 (S.D. Fla. 2015).
Applied here, these principles should make short work of this case. On November 26, 2014, Pablo Guevara and his wife boarded a cruise ship, the Spirit , in Barcelona, Spain. Later that first night, at around 11:30 p.m., Guevara left his wife in the casino and went in search of the cigar lounge. The accident occurred on Spirit 's pool deck. Here's the scene: Three steps lead up to a small landing, followed by a step down. Two pillars flank the landing. Each pillar has a light and a handrail; one pillar bears a sign warning pedestrians to "please use the handrail" and "watch your step." R. 66-1.
According to Guevara, the light next to the sign was out and the deck was wet. After he ascended the three steps, he didn't notice the step down, tripped, slipped, and broke his arm.
Guevara's negligence complaint against Norwegian targeted three defects: (1) The company "[f]ailed to adequately inspect the lights in the subject area to make sure operational"; (2) the company "[f]ailed to warn plaintiff of the danger of a wet and slippery floor in the subject area"; and (3) the company "failed to warn of the change of level in the area." R. 1 at 3-4.
Each theory does not work.
Begin with the broken-light-bulb theory. The unrebutted evidence shows that Norwegian did not notice the spent light bulb, that no one identified any such problem before the accident, and that its employees checked the area (and the light bulbs) twice a day and did not see any problem. On this record, Norwegian did not act negligently. The majority agrees.
Turn to the wet-deck theory. Here too Norwegian did nothing wrong, as it had no notice of any problem. The record does not contain any evidence of prior accidents on this part of the ship due to a wet deck. This thus is not a case in which the cruise ship identified the problem, say by putting orange cones near the hazard, and could be liable if its precautions did not adequately address the risk.
Think by comparison of Horne v. Carnival Corporation , 741 F. App'x 607 (11th Cir. 2018) (per curiam). A passenger sued the cruise line after high winds caused a door to slam and chop off part of his finger. Id. at 608. The cruise line had previously "put up signs warning of strong winds" but failed to provide notice on the day of the accident. Id. at 609. The prior signs, the court reasoned, could show that the cruise line had "notice of the hazardous condition." Id.
Nor is this a case in which passengers had slipped on this same wet deck before, placing the cruise ship on notice of the danger. See Sorrels v. NCL (Bahamas) Ltd. , 796 F.3d 1275, 1287-88 (11th Cir. 2015). No evidence of any such accidents appears in the record. Apparently appreciating these gaps in this theory of liability, Guevara does not develop on appeal his claim premised on a wet deck, which explains *728 why the court (correctly) does not address it.
That leaves the last theory-that Norwegian did not adequately warn of the risk from the step down. But that's the least plausible theory of the three. It takes up the one risk that night (a drop down in the steps) that came with a warning (a "please use the handrail" and "watch your step" sign). It involves a risk and a warning sign that predated Norwegian's ownership of the cruise ship. And it involves a warning sign that by Guevara's own admission could not be seen given the broken light. For many of the reasons that Judge Kathleen Williams rejected this claim as a matter of law, so would I.
Start with a problem of Guevara's making. By his own account, Guevara could not see the sign "because the bulb immediately above the sign was not functioning." Appellant's Br. 6; id. at 36 ("[T]he light on the pedestal just above the warning sign was out."); see also Reply Br. 6 ("The sign is clearly visible in daylight, or at night with appropriate lighting."). Warning signs are meant to be seen. Just as arguments are meant to be heard. And briefs and opinions are meant to be read. The law does not hold parties liable for signs that, by a claimant's own account, cannot be seen. I am not aware of any case from any court that holds a property owner liable for posting an inadequate warning sign when the source of the inadequacy-darkness-turned on bad luck, not the negligence of the owner. Guevara never acknowledges, much less fills, this yawning gap in his theory of the case.
No less importantly, Norwegian had nothing to do with the sign. It came with the boat. And no evidence shows that the sign did not do its job. The record does not contain any evidence of prior accidents during the day based on the step down or accidents during the night (whether the light worked or not) based on the step down. Because the boat came with the warning sign, Norwegian never took any affirmative act in connection with the alleged risk and cannot be held liable for it. See Horne , 741 F. App'x at 609 ; Sorrels , 796 F.3d at 1287-88.
Last of all, precedent does not allow us to hold that Norwegian knew about the sign and realized that the step was dangerous simply because Norwegian bought and operated the vessel. See Everett , 912 F.2d at 1359. That's simply another way of making Norwegian a general insurer-liable for all risks of running a cruise ship and transporting passengers-which is just what this court's decisions foreclose. See Keefe , 867 F.2d at 1322.
Everett v. Carnival Cruise Lines illustrates the point. 912 F.2d 1355 (11th Cir. 1990). A passenger tripped over a metal door threshold. Id. at 1357. She argued that she did not need to prove the cruise line knew about the threshold because the cruise line "created the threshold and maintained it. In other words, [the shipowner] should have known that there was a danger of passenger injury because it was the owner and operator of the ship." Id. at 1359. The court rejected the theory as a matter of law, holding that it would "defeat[ ]" the point of having a notice requirement and the point of "limit[ing] ... the shipowner's liability" so that it was not a general insurer of its passengers. Id.
Pizzino v. NCL (Bahamas) Ltd. is of a piece. 709 F. App'x 563 (11th Cir. 2017) (per curiam). A crew member spilled water on the deck, and the Eleventh Circuit re-affirmed that operation of a ship alone does not create notice. Id. at 564-66. Something more is required-namely that the passenger prove that the shipowner knew about the danger. Id. at 565.
*729 Size up this aspect of Guevara's argument-that the pre-existing warning sign gave Norwegian notice of this risk-from another direction. If it's fair to say that the warning sign put Norwegian on notice of the danger posed by the step down, the sign also must have made Guevara aware of the danger as well-unless daylight exists between Guevara's ability to understand the sign and Norwegian's. But the only thing that differentiates Guevara from Norwegian is Norwegian's operation of the Spirit . And we cannot attribute notice to a shipowner simply because it operates a ship, as case after case from this circuit says. See supra .
Any other approach to this case will make shipowners liable for every warning that a manufacturer places on any part of the ship. Imagine a manufacturer who places a sticker on lamps in cabin bedrooms, warning patrons that they can become hot to the touch. Or a manufacturer who warns that children might suffocate if they play with the plastic trash bags in cabin bathrooms. Under the majority's rule, the cruise line now possesses constructive notice of these dangers and can become liable to the first passenger who burns himself or the first child who asphyxiates. Cruise ships are floating cities, and these types of scenarios end only when the horizon does.
That Norwegian may argue at trial that this sign fulfilled its duty to warn and thus may still prevail, as the court points out, offers cold comfort to this shipowner and any other. All that means is that in some number of cases juries will not treat shipowners as general insurers and in some number of cases they will. But never , not sometimes , is the point of the court's steadfast commitment to declining to make shipowners the general insurers of their passengers. That is a rule of law, not a rule of fact.
I respectfully dissent.