CHRIS MCALILEY, UNITED STATES MAGISTRATE JUDGE
*1281 The Court has before it competing motions for summary judgment: Defendant Carnival Corporation's Motion for Summary Judgment (ECF No. 27 ), and Plaintiff Carol Mann's Motion for Summary Judgment (ECF No. 28 ). Both motions have been fully-briefed (ECF Nos. 33, 37, 38, 41), and the Honorable Robert N. Scola, Jr. has referred them to me for a report and recommendation, (ECF No. 39 ).
After careful review of the parties' legal memoranda and the applicable law, for the reasons that follow I recommend that the Court grant Defendant Carnival's Motion and deny Plaintiff Mann's Motion.
I. BACKGROUND
Mann filed her three-count Complaint on April 5, 2018. She alleges that on May 25, 2017, she tripped and fell on the gangway while disembarking from the M/S Carnival Sunshine following a cruise. (ECF No. 1 at ¶ 8 ). The Complaint further alleges that after the fall, "[n]ursing and doctoral staff in the ship's infirmary refused to acknowledge the injuries as [Mann] was soon to be no longer a passenger, and did not acknowledge either [Mann] or her husband's insistence that the injuries were severe." (ECF No. 1 at ¶ 15 ). In Count I, Mann sues Carnival for negligence for the allegedly dangerous gangway and inadequate provision of medical care. Count II alleges that Carnival is vicariously liable for the negligence of its medical staff, and Count III charges that Carnival was negligent in its hiring, retention and training of its medical personnel.
A. Procedural history
The Court's Scheduling Order provided a January 14, 2019 deadline for the close of discovery and the exchange of expert witness disclosures and a January 28, 2019 deadline for the filing of all dispositive motions. (ECF No. 10 ). On December 12, 2018, the parties filed a Joint Motion to Extend Discovery Period, Expert Disclosure Deadline and Dispositive Motion Deadline. (ECF No. 18 ). On December 13, 2018, the Court denied the parties' motion without prejudice and explained that, despite the parties' assertion to the contrary, the proposed changes to the Scheduling Order would not allow sufficient time before the trial date for the Court to resolve any dispositive motions. (ECF No. 19 ). The Court explained that the parties had, in effect, asked for a continuance of the trial date, and that if they sought this relief they must make that request clear and show good cause for such a continuance. Id.
On January 7, 2019, the parties appeared before the Court for a discovery hearing after which the Court extended the fact discovery and expert disclosure deadline to February 1, 2019. (ECF No. 20 ). The deadline for the filing of dispositive motions remained unchanged. On January 28, 2019, both parties filed their Motions for Summary Judgment. (ECF Nos. 27, 28).
On January 30, 2019, two days after the summary judgment motions were filed, Mann filed a Motion for Continuance and Motion to Amend Initial Scheduling Order or, In the Alternative, Motion for Extension *1282 of Time to Complete Fact Discovery and Provide Expert Witness Disclosures. (ECF No. 29 ). Therein, Mann asked the Court to either continue all trial deadlines, or extend the deadline for completion of fact discovery and the exchange of expert witness disclosures.
Plaintiff served her expert disclosures on February 1, 2019. (ECF No. 32 at ¶ 4 ). A few days later Carnival filed a Motion to Strike Plaintiff's Expert Disclosures (ECF No. 32 ), and on March 5, 2019, the Court held a hearing on Mann's Motion for Continuance and Carnival's Motion to Strike. The Court granted Mann's Motion in part, and extended the discovery deadline to permit Mann to depose Carnival's corporate representative. (ECF No. 46 ). The Court did not extend other deadlines or the trial date. Id. The Court granted Carnival's Motion to Strike, noting that Mann's disclosures fell well short of the requirements of Rule 26(a)(2)(B) and (C) and were contrary to the Court's Scheduling Order. The Court thus struck Mann's disclosures pursuant to Federal Rule of Civil Procedure 37(c)(1). Id. As a result, Mann has no expert witnesses.
B. Undisputed material facts
The following material facts are not disputed:
Mann testified at deposition that as she disembarked the M/S Carnival Sunshine on May 25, 2017, there was a handrail on the left side of the gangway and that "[t]here was plenty of room" on the gangway. (ECF No. 27-1, 29 :19 - 30:14). She "was on the little gangplank, and I guess I had some bags or something in my hand, and my husband called me and said he needed-I don't know what he wanted. So [ ] I went to go off, and there was this little ledge about this high, and I couldn't see it ...." (ECF No. 27-1 at 25 : 15-20). The ledge was "nothing you step up on. It's beside you," and that it was "not in the flow of traffic", but rather was "parallel to the way that you would walk." (ECF No. 27-1 at 33 :19-21, 34: 11-15). Mann "couldn't figure out what had tripped" her and didn't know how her foot could have gotten on the other side of the ledge. (ECF No. 27-1 at 35 :16 - 25). She did not know how she tripped over the ledge, she knew it tripped her because she fell. (ECF No. 27-1 at 36 :8-18). According to Mann, a person regularly getting off the ship would not have tripped over the ledge, and that she would not have tripped over the ledge if she had not turned around for some reason. (ECF No. 27-1 at 67 : 18-24). Mann further testified that the ledge "was not in my way." (ECF No. 27-1 at 68 : 4-7).
After Mann tripped, "[t]here were people in white uniforms standing around, and the nurse came and helped [her], and - and everybody was nice." (ECF No. 27-1 at 38 :24 - 39:5). She believed the nurse was a Carnival nurse who worked on the ship, and that she did not do "anything wrong". (ECF No. 27-1 at 39 :21-25; 40:18-20). The nurse offered to take Mann to the ship's medical center, but she declined the offer because "[w]e had met a couple there, and they needed a ride somewhere in South Carolina ... and so we were going to take them part of the way home, and so I didn't go down." (ECF No. 27-1 at 40 :3-9). No one from the cruise ship, neither the nurses nor any of the ship doctors, refused to acknowledge that Mann was hurt or refused to help her. (ECF No. 27-1 at 57 :15-20).
With respect to Carnival's notice of the allegedly dangerous gangway, in response to an interrogatory from Mann, Carnival disclosed that there were no known prior accidents that occurred in the Port of Charleston for the three-year period before Mann's alleged fall. (ECF No. 27-2 at No. 16 ).
*1283 II. SUMMARY JUDGMENT STANDARD
Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ; Fed. R. Civ. P. 56(a) and (c). Under Rule 56, "[t]he moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc. , 929 F.2d 604, 608 (11th Cir. 1991).
Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party may not rely on the pleadings, but must "come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis omitted)). The non-moving party must put forth more than a mere "scintilla" of evidence; rather, it must identify evidence on which the jury could reasonably find for the nonmovant. Anderson, 477 U.S. at 252, 106 S.Ct. 2505. The Court must view the record and all factual inferences in the light most favorable to the non-moving party. Clark , 929 F.2d at 606 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 at 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).
In the unusual situation where neither party can prove the affirmative or the negative of an essential element of a claim, then the moving party may satisfy its initial burden by showing that the responding party would not be able to meet its burden of proof at trial. See Clark , 929 F.2d at 607 (explaining "the unusual situation" that the Supreme Court addressed in Celotex Corp. v. Catrett , 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ). The burden would then shift to the non-moving party "to point to other portions of the record that would show that there was indeed a genuine issue of fact regarding the [ ] issue." Id. at 607-608.[1]
In the end the Court must decide whether " 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Allen v. Tyson Foods, Inc. , 121 F.3d 642, 646 (11th Cir. 1997) (quoting Anderson , 477 U.S. at 251-52, 106 S.Ct. 2505 ).
With these principles in mind, the Court turns first to Carnival's motion for summary judgment.
III. ANALYSIS
A. Applicable Law
Federal maritime law applies to actions arising from alleged torts "committed aboard a ship sailing in navigable waters." See Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1320 (11th Cir. 1989) (citations omitted). This principle extends to torts occurring at offshore locations or ports-of-call during the course of a cruise. See *1284 Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 901-902 (11th Cir. 2004). The parties do not dispute that maritime law governs this action.
General maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." See East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864-65, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (citations omitted). In the absence of well-developed maritime law pertaining to a claim, the Court will incorporate general common law principles and the applicable state law to the extent they do not conflict with federal maritime law. See Just v. Chambers, 312 U.S. 383, 388, 61 S.Ct. 687, 85 L.Ed. 903 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation.") (citations omitted); Becker v. Poling Transp. Corp., 356 F.3d 381, 388 (2nd Cir. 2004) ("federal maritime law incorporates common law negligence principles generally, and [state] law in particular").
B. Count 1: Negligence
To satisfy the burden of proof in a negligence action, a plaintiff must show that: (1) defendant owed plaintiff a duty; (2) defendant breached that duty; (3) this breach was the proximate cause of plaintiff's injury; and (4) plaintiff suffered damages. Hasenfus v. Secord, 962 F.2d 1556, 1559-60 (11th Cir. 1992) (citing Florida cases). Each element is essential to Mann's negligence claim and she cannot rest on the allegations of her Complaint to defeat summary judgment. Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992).
1. Mann fails to provide sufficient evidence to show how Carnival breached the duty of care owed to her
Mann has not provided sufficient evidence that Carnival breached its duty of care. It is a settled principle of maritime law that a shipowner owes passengers the duty of exercising reasonable care under the circumstances. Kermarec v. Compagnie Generale Transatlantique , 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959) ; see also Luby v. Carnival Cruise Lines , Inc., 633 F. Supp. 40, 41 n.1 (S.D. Fla.1986). The shipowner does not serve as an insurer to its passengers; it is liable only for its negligence. Id.
In this instance, the applicable standard of care is "ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure." Keefe , 867 F.2d at 1322. See also Wieters v. Carnival Corp. , No. 16-25284-CIV, 2018 WL 4682217, at *3 (S.D. Fla. Sept. 28, 2018) ("In the Eleventh Circuit, under federal maritime law, there must be a finding of actual or constructive notice of a dangerous condition before a cruise ship can be held liable for negligence."). To be liable, Carnival must have had notice, either actual or constructive, of an alleged risk-creating condition.
In support of its Motion, Carnival relies on its interrogatory response that it knows of no other accidents that occurred in the Port of Charleston for three years prior to Plaintiff's claimed accident. (ECF No. 27-2 at p. 2 ). Thus, on this evidence, Carnival has met its initial burden of production to support its motion summary judgment. The burden shifts to Mann to identify specific *1285 facts that show a genuine dispute regarding whether Carnival breached its duty of care to Mann.
Mann has presented no evidence that Carnival knew or should have known that the gangplank at the Port of Charleston posed any risk-creating condition for any passenger. For example, there is no evidence of any accident reports, passenger comments, or reports from safety inspections that alerted Carnival of any potential safety concerns related to the gangplank.
Mann argues that Carnival had actual or constructive notice of the dangerous conditions of gangplanks generally, and supports its argument with citation to unrelated cases involving different factual predicates. (ECF No. 37 at 14 ). These cases, however, are not a part of the record in this matter and are factually distinguishable from the instant case.
Mann also summarily argues that she was not required to show notice, because Carnival created the hazard itself. Mann asserts that her expert will "testify that [Carnival] actually created, participated in, or approved the design of the gangplank." (ECF No. 37 at 10 ). The Court, however, struck Mann's expert disclosures because Mann failed to meet her obligations under Federal Rule of Civil Procedure 26(a)(2)(B) and (C) and the Court's Scheduling Order. (ECF No. 46 ). Mann has no expert witness who could testify that Carnival was involved in the design of the gangplank. Moreover, Carnival's interrogatory responses state that "the gangway is owned and controlled by another entity, the South Carolina State Port Authority." (ECF No. 27-2 at No. 16 ).
And, in any event, the Eleventh Circuit has rejected the notion that a cruise line operator could be liable for negligence without actual or constructive notice if it negligently created or maintained its premises. Pizzino v. NCL (Bahamas) Ltd. , 709 Fed. App'x 563, 565-66 (11th Cir. 2017) ; see also Morhardt v. Carnival , 304 F. Supp. 3d 1290, 1295 (S.D. Fla. 2017) ("[T]he Eleventh Circuit's recent opinion in Pizzino squarely rejected any exception to the notice requirement.").
2. Mann fails to show that Carnival's negligence was the proximate cause of her injuries
Carnival is also separately entitled to partial summary judgment because Mann has failed to identify any admissible evidence on the issue of medical causation for her alleged concussion, back injury and pain, pain in her knee, and general pain requiring three weeks bedrest.
Expert testimony is required to establish medical causation for conditions not readily observable or susceptible to evaluation by lay persons. Rivera v. Royal Caribbean Cruises Ltd. , 711 Fed. App'x 952, 954 (11th Cir. 2017) ("When the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required.").
Courts have recognized that soft-tissue injuries, such as lower back pain are not a "readily observable" medical conditions and, therefore, expert testimony as to the cause of such injuries is required. See Jones v. Royal Caribbean Cruises, Ltd. , 2013 WL 8695361, at *6 (S.D. Fla. Apr. 4, 2013) (quoting Vero Beach Care Ctr. v. Ricks , 476 So.2d 262, 264 n. 1 (Fla. Dist. Ct. App. 1985) ). Expert testimony is also required to distinguish between ailments that a plaintiff had before an incident and those she experienced after-and due to-the incident. Rivera , 711 Fed. App'x at 954-55.
With no expert medical witness, Mann is unable to establish proximate *1286 cause as to her injuries which are not "readily-observable." Mann seeks damages related to (1) a concussion; (2) back injury and pain; (3) broken tooth ; (4) bruising and pain in her chin; and (5) bruising and pain in her knee; and (6) "genera (sic.) pain throughout my body which caused me to be on bedrest for three weeks." (ECF No. 27-3 at Interrogatory No. 4 ). With the exception of the superficial bruising to Mann's face and knee and her broken tooth, Mann's injuries are not readily observable medical conditions and expert testimony on the issue of causation is required. See Rivera , 711 Fed. App'x at 954-55 ; Jones , 2013 WL 8695361, at *6.[2]
Medical expert testimony is also necessary to distinguish between the ailments Mann experienced before her fall and those experienced after-and due to-that fall. See Rivera , 711 Fed. App'x at 955. Mann testified that she had arthritis in her back and had undergone back surgery before she fell on the gangway. (ECF No. 27-1 at 11 :4 - 12:25). Additionally, Mann testified that after that fall, she slipped in the shower and sustained a compression fracture to her spine. (ECF No. 27-1 at 58 :15 - 59:18). Given Mann's prior and subsequent injuries, and the nature of her alleged injuries to her back, knee, and head-all conditions which are not "readily observable"-expert testimony would be required for her to establish proximate cause. As Mann has not and cannot identify any record evidence to provide such support, Carnival is entitled to partial summary judgment as to Mann's "non-readily observable" injuries, specifically her concussion, back injury and pain, pain in her chin and knee, and general pain requiring three weeks bedrest.
Mann of course could testify regarding her readily observable injuries, which include the superficial bruising and abrasions on her face and knee and her broken tooth. Thus, Carnival is not entitled to summary judgment on the basis of Mann's failure to establish proximate cause as to those injuries.
3. Genuine Issues of Material Fact Exist Regarding the Existence of Mann's Damages
Carnival also moves for summary judgment on the basis that "there is no evidence of damages." (ECF No. 27 at 2 ). Although Mann disputes this in her Response, and quotes from medical records related to treatment allegedly required for her back pain, (ECF No. 37 at 13 ), she mostly fails to attach or identify medical records which she claims support her assertions. The only record evidence Mann identifies that references an injury is a visit summary from Dr. Joseph L. Jackson. Therein, Dr. Jackson wrote that Mann tripped coming off a cruise ship, landed on her right knee and hit her right cheek and chin. He noted that Mann had a "little bit of a contusion, superficial abrasion, to her right cheek. She has some bruising on the right side of her chin. She does have some bruising on her right knee over the patella." (ECF No. 37-5 ). Dr. Jackson also noted that Mann did not lose consciousness, *1287 though she was initially confused, and did not have any nausea or vomiting. An x-ray was taken, it appears of Mann's knee, and showed no fracture. (Id. ).
Mann has only put forward evidence of the injuries Dr. Jackson noted in his report. (ECF No. 37-5 ). On this record, her only evidence of injuries are those Dr. Jackson noted in his report, which he could testify to at trial as a lay witness, and those Mann can testify to herself. Thus, Mann has some evidence of some of her claimed damages, and Carnival is not entitled to summary judgment on this third and separate basis.
C. Count III: Negligent Hiring, Retention, and Training
Carnival is entitled to summary judgment on Mann's claim against Carnival for Negligent Hiring, Retention, and Training of the medical personnel, as Mann has failed to provide any evidence in support of this claim.
A principal may be subject to liability for physical harm to third persons if a plaintiff proves that (1) an agent/employee/contractor of the principal was incompetent or unfit to perform the work for which it was hired and/or retained; (2) the principal knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury. Flaherty v. Royal Caribbean Cruises, Ltd. , 172 F. Supp. 3d 1348, 1351 (S.D. Fla. 2016) ; see also Smolnikar v. Royal Caribbean Cruises Ltd., 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011).
Carnival is correct that the record before the Court contains no evidence of incompetence or unfitness on the part of the medical personnel, no evidence that the Carnival knew or reasonably should have known of any incompetence or unfitness, and no evidence that any action or inaction by the medical personnel was a proximate cause of any injury to Mann. In fact, the only record evidence regarding Mann's treatment by the medical personnel is her testimony that the medical staff promptly attempted to assist her, offered to take her to the medical unit for treatment which she declined, and did nothing wrong.[3]
Notably, Mann did not respond to Carnival's argument in its Motion for Summary Judgment that there was no evidence of any negligent act by medical personnel onboard the vessel. Failure to oppose an argument contained in a motion for summary judgment is grounds for granting the motion by default. See Local Rule 7.1(c). The only mention of the medical personnel in Mann's response is her assertion, without any citation to evidence , that following the fall "[Mann] remained *1288 aboard the vessel and no medical attention had been provided" and that "no attempts were made to transport an unconscious passenger away from a highly congested area where passengers were attempting to leave the ship." (ECF No. 37 at 11 ). Mann's own deposition testimony directly rebuts these assertions.
D. Count II: Vicarious Liability
In Count III Mann claims that Carnival is vicariously liable for its medical staff's failure to properly treat her after her fall. As explained above, there is no evidence of any negligence or incompetence by the medical staff. A principal cannot be held vicariously liable if a claim for negligence cannot be stated against its purported agent. Flaherty v. Royal Caribbean Cruises, Ltd. , 172 F. Supp. 3d at 1353. Again, in her response memorandum, Mann chose not to respond to Carnival's argument that it is entitled to summary judgment on this Count. For these reasons, Carnival is entitled to summary judgment on Mann's vicarious liability claim.
IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Mann moved for partial summary judgment on its negligence claim in Count I, on the ground that Carnival breached its duty to protect its passengers from falling by installing handrails on both sides of the gangplank, which breach was the proximate cause of Mann's injuries and resulting damages. (ECF No. 28 at p. 1-2 ).
At the outset, the Court notes that Mann's motion is largely unsupported by any record evidence. Mann attempts to rely on a number of documents addressing handrails or vessel safety in unrelated contexts. Not only is this evidence irrelevant to this case, but it is also insufficient to support Mann's Motion. Mann attempts to establish that Carnival had a specific duty to install a handrail on both sides of the gangplank by reference to (1) OSHA's Safety and Health Regulations for Longshoring (ECF No. 28-2 ); (2) OSHA's Safety and Health Standards for Shipyard Employment (ECF No. 28-3 ); (3) the Maritime Safety Committee's Guidelines for Construction, Installation, Maintenance and Inspection/Survey of Means of Embarkation and Disembarkation (ECF No. 28-4 ); (4) a United States Coast Guard Marine Safety Alert (ECF No. 28-5 ). Mann is neither a longshoreman nor employed by a shipyard, and the documents she provided do not establish a duty on the part of Carnival to Mann. The Maritime Safety Committee's Guidelines do not explicitly require two handrails, but rather require annual inspection of handrails, among other vessel features. The USCG Marine Safety Alert says nothing about any specific handrail requirements, but rather urges the use of best practices in gangway safety.
Mann appears to attempt to use these documents to simultaneously establish that Carnival had a specific duty to provide two handrails and to establish that Carnival was on notice of the generally dangerous nature of gangways. The documents fail to achieve either aim.
For these reasons, and for the reasons offered in support of granting Carnival's Motion for Summary Judgment, this Court must deny Mann's Motion for Summary Judgment on Count I.
V. CONCLUSION
In sum, for the reasons stated herein, the Court finds that the Defendant's motion should be GRANTED as to all counts and Plaintiff's Motion DENIED.
VI. RECOMMENDATIONS
Based on the foregoing, I RECOMMEND that the Court GRANT Defendant's *1289 Motion for Summary Judgment, (ECF No. 27 ). I further RECOMMEND that the Court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 28 ).
VII. OBJECTIONS
No later than seven days from the date of this Report and Recommendation the parties may file any written objections to this Report and Recommendation with the Honorable Robert N. Scola, Jr., who is obligated to make a de novo review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. See Thomas v. Arn , 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; Henley v. Johnson , 885 F.2d 790, 794 (11th Cir. 1989) ; 28 U.S.C. § 636(b)(1) ; 11th Cir. R. 3-1 (2016).

This standard is relevant to the Court's analysis of the causation element of Plaintiff's negligence claim. See Section III.B.2.

Mann's treating physician, Dr. Jackson, could testify as a lay witness, but because he was not properly disclosed as an expert witness, he would be precluded from offering an opinion about the cause of her injuries. See Chapman v. Procter & Gamble Distrib., LLC , 766 F.3d 1296, 1316 n. 23 (11th Cir. 2014) ("A treating physician providing lay testimony can testify narrowly, limited to personal knowledge resulting from providing medical care, involving consultation, examination, or treatment of a patient plaintiff." (citing United States v. Henderson , 409 F.3d 1293, 1300 (11th Cir. 2005) (distinguishing between an oral surgeon's testimony that a patient had a fractured jaw as opposed to giving a hypothesis as to the cause)).

Mann testified as follows:
Q: When you came to after this happened, I think you said when you first became aware, there was - there were already people in white uniforms there helping you out?
A: There were people in white uniforms standing around, and the nurse came and helped me, and - and everybody was very nice.
(ECF No. 27-1 at pg. 38 :24 to 39:5).
Q: [D]o you think that the nurse did anything wrong in terms of taking care of you? (objection omitted)
A: Oh, no. She was very nice.
Q: And I-forgive me if I just asked you this. Did she offer to take you back to the medical infirmary?
A: She did. We had met a couple there, and they needed a ride somewhere in South Carolina, and so we had-and they had already gone, but they turned around and came back, and so we were going to take them part of the way home, and so I didn't go down.
(ECF No. 27-1 at 39 :21 to 40:9).